CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 0 4 2009

JOHN F. CORCORAN, CLERK
BY: _____
       DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| ROBERT C. LAWRENCE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:08cv00328** |
| **v.** | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **By:  Michael F. Urbanski** |
| **Commissioner of Social Security,** | ) | **United States Magistrate Judge** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Robert C. Lawrence ("Lawrence") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act").  On appeal, Lawrence contends, inter alia, that this case should be remanded for further consideration of the disability onset date, as Lawrence was awarded benefits based on a subsequent application as of November 8, 2007, the day after the ALJ's unfavorable decision in this case.  The undersigned agrees and therefore remands this case pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this new evidence in determining whether an earlier disability onset date is warranted, and, if so, determining such a date.[1]

### I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits.  Mastro v. Apfel,

---

[1] As the case is being remanded for this purpose, the other arguments Lawrence makes on appeal need not be addressed.

270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[2] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[2] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

## II

Lawrence was born in 1960 (Administrative Record, hereinafter "R." 48), and at the time of the ALJ's decision he was considered a "younger individual" under the Act. 20 C.F.R. §§ 404.1563(b), 416.963(b). He completed the eleventh grade but did not earn a general equivalency diploma. (R. 19, 20, 203, 373.) Prior to the alleged onset date, Lawrence worked as a machine operator, maintenance worker and electrician. (R. 19, 61-62, 203-05, 374-76.) Lawrence alleges a disability onset date of March 15, 2004, due to severe allergies, chronic obstructive pulmonary disease (COPD), asthma, chronic bronchitis, and emphysema. (R. 19, 44, 60, 249.) His application for benefits was rejected by the Commissioner initially and again upon reconsideration. An administrative hearing was convened before an ALJ on October 5, 2005. (R. 304-45.) The ALJ found that Lawrence had the RFC to perform work at the light exertional level but was limited to simple, unskilled work requiring minimum concentration and no interaction with the public. (R. 28.) In addition, the ALJ found that Lawrence needs low stress work. (R. 28.) Although he had no transferable skills from his past relevant work, the ALJ found that there were a significant number of jobs that exist in the national economy that Lawrence could perform; thus, he was not disabled under the Act. (R. 28-29.)

The Appeals Council denied Lawrence's request for review (R. 7-10), and Lawrence subsequently filed a complaint with the United States District Court. On February 5, 2007, the court remanded the case at the request of the Commissioner. (R. 290.) The Appeals Council issued an Order of Remand on March 23, 2007, requiring the ALJ to evaluate the examining and nonexamining source records, reevaluate the entirety

4

Case 7:08-cv-00328-mfu   Document 25   Filed 05/04/09   Page 4 of 17   Pageid#: 86

of the medical record, and obtain evidence from a vocational expert to clarify the effects of the assessed limitations on Lawrence's occupational base. (R. 294-96.) Accordingly, the ALJ held a second administrative hearing on September 12, 2007. (R. 369-408.) The ALJ issued a decision on November 7, 2007 (R. 249-60), finding Lawrence suffers from severe impairments including COPD, asthma, multiple allergies, depression, anxiety, eczema, and drug and alcohol abuse. 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ held that Lawrence has the RFC to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for 6 hours out of an 8 hour workday; that he must work in a clean environment and avoid all exposure to fumes, odors, dusts, gases, and poor ventilation; that he must avoid hazards; that he cannot climb ropes or scaffolds; and "[d]ue to moderate difficulties interacting appropriately with the public and embarrassment due to eczema," that he cannot perform tasks that require more than occasional interaction with the public. (R. 253.) Considering his age, education, work experience and RFC, the ALJ determined that Lawrence was not disabled under the Act, as he acquired skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (R. 259.) The Appeals Council denied Lawrence's request for review (R. 243-45) and this appeal followed.

At the time he filed a complaint with the court, Lawrence filed a new application for disability insurance benefits and supplemental security income. Based on this new application, the Commissioner granted Lawrence benefits as of November 8, 2007, the date after the ALJ's unfavorable decision. (R. 241-42.) The Commissioner stated he was

not permitted to establish an onset date on or before the ALJ's decision of November 7, 2007. (R. 241.)

### III

At the first administrative hearing, Lawrence testified that he has had problems breathing "pretty much all [of his] life," but that it has worsened since 2000. (R. 313.) The medical evidence documents Lawrence's complaints of asthma and allergy issues as far back as 1999. (R. 368.) On December 15, 2000, allergy testing administered by Dr. James P. King revealed Lawrence is allergic to numerous allergens, including dust, weeds, grass, almost all trees, animal dander, yeast, chocolate, coconut, soybeans, tomato and wheat, among others. (R. 96-104, 172.) Dr. King started Lawrence on weekly allergy shots (R. 172-73), but Lawrence testified he could not afford to continue receiving them.[3] (R. 327.)

On September 11, 2003, Lawrence was seen at Twin County Regional Hospital Emergency Department complaining of depression. (R. 108-111.) At an initial evaluation on November 10, 2003, Lawrence presented to Dr. Ralph A. Capaldo with complaints of uncontrolled allergic rhinitis and asthma. (R. 117.) Lawrence's symptoms included red, watery, itchy and swollen eyes; increased sneezing; increased shortness of breath; wheezing; and chronic cough. (R. 117.) Lawrence also reported a history of chronic eczema of his arms and scalp, bronchial asthma, COPD and emphysema,[4] as well

---

[3] A letter from Dr. King to Lawrence's counsel dated April 14, 2005 states that Lawrence presented to Dr. King on five occasions in early 2001 for follow-up on his allergies and asthma, but he failed to show up for an appointment on May 18, 2001. (R. 172-73.) Dr. King has not seen Lawrence since that time. (R. 173.)

[4] At the second administrative hearing, Lawrence testified that he lost his job because "I couldn't breathe. My skin gave me a lot of trouble. My eyes gave me a lot of trouble."

as chronic nicotine and alcohol abuse. (R. 117.) He admitted to smoking one to one and a half packs of cigarettes and drinking six to twelve beers every day. (R. 117.) Dr. Capaldo diagnosed Lawrence with bronchial asthma with acute flare, COPD and emphysema, eczema of the arms and scalp, chronic nicotine and tobacco use, heavy beer use and GERD with reflux esophagitis. (R. 118.) He recommended Lawrence stop smoking and drinking and prescribed Prednisone, Advair Diskus, an Albuterol inhaler, and Zyrtec. (R. 118.)

On December 16, 2003, Lawrence returned to see Dr. Capaldo after falling on some ice. Notes indicate that Lawrence had continued to smoke at least three quarters of a pack of cigarettes per day, even though he had been advised to quit. (R. 116.) Examination revealed seborrheic dermatitis and eczema on his scalp; his eyes were prominent, sclerae reddened, conjunctivae severely injected, and he had some periorbital edema; decreased breath sounds both bases; expiratory wheezes; and he was extremely tender over the right lateral chest wall involving the last few ribs. (R. 116.) His diagnoses remained the same, with the addition of right chest wall pain from probable chest and rib contusion. (R. 116.) He was given a work excuse through December 18, 2003. (R. 116.) Lawrence saw Dr. Capaldo again on March 11, 2004, at which time he complained of severe redness, tearing, itchiness and discomfort in both eyes. Examination revealed evidence of seborrheic dermatitis and eczema on the scalp, his eyes were prominent and the sclerae were extremely reddened, there was some periorbital edema, and the conjunctivae were severely injected. (R. 115.) Lawrence was diagnosed

_____

(R. 376.) Specifically, Lawrence stated that his skin itches, burns, bleeds and oozes (R. 216-17), his chest burns, his eyes swell shut, and he has trouble breathing (R. 381, 388) due to his impairments.

with severe dust-induced allergic conjunctivitis and was given a work excuse through March 15, 2004. (R. 115.)

When Lawrence returned to see Dr. Capaldo on April 15, 2004 for a follow up of his allergic conjunctivitis and bronchial asthma, he was noted to be mildly intoxicated and admitted to drinking heavily the night before and that morning. (R. 114.) Lawrence reported he had not been working at the Vaughn Bassett furniture factory for over a month because of his inability to see correctly from his conjunctivitis and because he had been drinking heavily following the breakup with his girlfriend. (R. 114.) He had not been taking any medications because he was out of money. (R. 114.) Dr. Capaldo diagnosed Lawrence with acute and chronic alcohol intoxication, severe allergic conjunctivitis, COPD and emphysema with acute exacerbation, and bronchial asthma with acute flare. (R. 114.) He advised Lawrence to refill his prescriptions, quit drinking and smoking, find a job that does not involve exposure to dust, and seek counseling. (R. 114.)[5]

Notes from the Brock Hughes Free Clinic on June 8, 2004 reveal that Lawrence's eyelids were red and swollen; he was diagnosed with allergies/asthma and instructed to stop smoking. (R. 367.) He did not show up for his follow-up visit on June 17, 2004. (R. 366.) On July 14, 2004, he presented to the Pulaski Community Hospital Emergency Room after experiencing a syncopal episode.[6] (R. 123.) He was mildly to moderately intoxicated and his breath smelled of alcohol; his urine drug screen was positive for

---

[5] Lawrence stopped seeing Dr. Capaldo after he moved to Draper to live with his brother. (R. 132.)

[6] Syncope is defined as a temporary suspension of consciousness due to generalized cerebral ischemia; called also *faint*. Dorland's Illustrated Medical Dictionary 1807 (30th ed. 2003).

benzodiazepines and marijuana. (R. 124, 128, 133.) A chest x-ray was negative for cardiopulmonary disease. (R. 130.) Two days later, Lawrence saw Dr. Khawam at Fort Chiswell Medical Center. (R. 133.) He was diagnosed with COPD, severe allergies, a recent vasovagal episode complicated by alcohol abuse and possibly other substances, and alcohol abuse. (R. 133.) He was told to quit drinking and was given samples of Zoloft, Optivar eyedrops, Astelin nasal spray, Nasacort AQ, Clarinex and Advair Diskus. (R. 133.)

Dr. William Humphries conducted a consultative physical examination of Lawrence on September 1, 2004. (R. 135-50.) Examination revealed diminished breath sounds bilaterally with a few inspiratory rhonchi bilaterally, posteriorly and mild expiratory wheezes with the left being worse than right. (R. 137.) Testing indicated moderately severe obstructive airways disease. (R. 139.) Additionally, he had scattered excoriations in the antecubital areas and dorsal aspect of the arms, as well as some scab-type excoriations in the central hairline anteriorly. (R. 137.) Dr. Humphries diagnosed Lawrence with COPD and eczema of the scalp and arms with a possible neurodermatitis. (R. 137.) Dr. Humphries opined that Lawrence had the RFC to sit 6 hours in an 8 hour workday and was expected to be able to stand or walk no more than 2 hours in an 8 hour workday, although a pulmonary function test would be required to determine the extent to which he could walk. (R. 137.) Dr. Humphries further found that Lawrence could lift 25 pounds occasionally and 10 pounds frequently, but restricted him to occasional climbing, kneeling and crawling, with no exposure to fumes. (R. 138.)

Karen Heinbockel, Psy.D., and Robert Smith, Ph.D., conducted a consultative psychological evaluation on December 5, 2005, noting that Lawrence may have

9

exaggerated some of his symptoms on a Personality Assessment Inventory as a "plea for help." (R. 181). Although Lawrence reported drinking six to twelve beers every three days and smoking a pack of cigarettes daily, notes reveal that he was "rather evasive" about his alcohol and other drug use and appeared to be minimizing the extent of his use. (R. 180.) He was diagnosed with major depressive disorder (moderate), alcohol abuse and adjustment disorder with anxiety. (R. 183.) His GAF was pegged at 55.[7] (R. 183.) His prognosis was fair to good and it was noted that he would benefit from outpatient psychotherapy to help reduce his symptoms of anxiety and depression, improve his coping skills and social support system. (R. 183.) With respect to his ability to perform work-related activities, Lawrence had mild limitations in maintaining attention and concentration for extended periods, working with or near others without being distracted by them, and performing at a consistent pace; he also had mild to moderate limitations in performing activities within a schedule, maintaining regular attendance and being punctual. (R. 184.) Lawrence had moderate limitations in his ability to interact with the public and to respond appropriately to work pressures in a usual work setting, and mild limitations in interacting appropriately with supervisors and co-workers and responding appropriately to changes in a routine work setting. (R. 185.)

On March 22, 2006, Lawrence was seen at the Brock Hughes Free Clinic ("Free Clinic") with complaints of multiple allergies. He was diagnosed with allergic rhinitis/asthma and was prescribed Lodrane, Advair, Singulair, Wellbutrin, Albuterol and

---

[7] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 1994). A GAF of 51-60 indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id. at 34.

Nasocart, and was advised to stop smoking. (R. 365.) As of April 6, 2006, Lawrence had not picked up any of his prescribed medications and reported that he had seen some improvement in his allergy symptoms. (R. 363.) After failing to show up for two appointments (R. 360, 361), Lawrence presented to the Free Clinic again on October 24, 2006. (R. 359.) Notes reveal he smelled of alcohol. (R. 359.) He was diagnosed with COPD and his prescriptions were refilled. (R. 359.)

A Medication Evaluation completed by Janice Marshall, FNP on October 24, 2006 for Virginia's Temporary Assistance for Needy Families, food stamps and other such assistance, states Lawrence is unable to work for a period greater than 90 days. (R. 357.) The form lists COPD as Lawrence's primary diagnosis, and allergies and asthma as secondary diagnoses. (R. 357.)

On May 30, 2007, Lawrence returned to the Free Clinic for prescription refills, complaining of allergy/asthma flare-ups. (R. 353.) He was diagnosed with asthma, seasonal allergies, and sinusitis, and was prescribed Levaquin, Singulair, Prednisone, Ventolin, Advair, and Wellbutrin. (R. 353-54.)

State agency physician Michael J. Hartman, M.D., completed a Physical Residual Functional Capacity Assessment on September 13, 2004, finding Lawrence can occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds and stand, walk and sit for 6 hours in an 8 hour workday. (R. 152.) Additionally, Dr. Hartman found Lawrence can occasionally use ramps, climb stairs and ladders but never climb ropes or scaffolds, and he should avoid all fumes, odors, dusts, gases, and poor ventilation. (R. 154.) This assessment was reviewed and affirmed by state agency physician Richard M. Surrusco, M.D., on October 27, 2004. (R. 157.)

11

In a Psychiatric Review Technique completed on September 14, 2004 by E. Hugh Tenson, Ph.D., and Howard Leizer, Ph.D, Lawrence was evaluated under Listing 12.04 Affective Disorders and 12.09 Substance Addiction Disorders, but neither impairment was found to be severe. (R. 158.) Rather, Lawrence was noted to have only mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace, and had no repeated episodes of decompensation. (R. 168.)

Based on this evidence and the testimony of the vocational expert at the administrative hearing, the ALJ determined that Lawrence was not disabled under the Act as of November 7, 2007.

## IV

Lawrence argues that this case should be remanded for reconsideration of the disability onset date in light of new evidence documenting that the Commissioner found Lawrence disabled in a subsequent application as of the date after the ALJ's unfavorable opinion. The undersigned agrees.

In his subsequent application for disability insurance benefits and social security income, Lawrence alleged disability based on COPD, severe allergies and depression (R. 241), all of which were impairments considered by the ALJ on Lawrence's initial application. Based on Lawrence's subsequent application, the Commissioner found him disabled as of November 8, 2007, the day after the ALJ rendered his final decision denying benefits. (R. 241-42.) However, the Commissioner declined to find Lawrence disabled as of his claimed onset date of March 15, 2004, stating "[w]e are not permitted to establish an onset on or before the judge's ruling date of 11/07/07." (R. 241.)

In his summary judgment brief, Lawrence states that the notice approving benefits on the subsequent application was submitted to the Appeals Council, but the Appeals Council offered no explanation as to why the case was not reviewed or remanded for consideration of this evidence. (Pl.'s Br. 5.) However, the notice approving benefits is dated August 8, 2008 (R. 241), well after the date of the Appeals Council's decision on March 12, 2008 (R. 243) and after Lawrence filed his complaint with the court on May 15, 2008. Based on these dates, the undersigned does not see how the notice approving benefits on Lawrence's subsequent application could have been submitted to and considered by the Appeals Council. Yet, inexplicably, this notice is incorporated into the administrative record.[8] (R. 241-42.) Even so, the undersigned finds it appropriate to consider this evidence under sentence six[9] of 42 U.S.C. § 405(g), as opposed to sentence four,[10] because the notice from the Social Security Administration approving benefits could not have been submitted to the Appeals Council and appears to have been incorporated erroneously into the record.

Pursuant to sentence six of 42 U.S.C. § 405(g), a reviewing court may remand a case to the Commissioner upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Evidence

---

[8] The administrative record was prepared on October 15, 2008.

[9] Sentence six states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ." 42 U.S.C. § 405(g).

[10] Sentence four states that the court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

is new if it is relevant to the determination of disability at the time the application was first filed and not merely cumulative. Borders, 777 F.2d at 955; see also Wilkins v. Sec'y Dept. Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Evidence is new within the meaning of this section if it is not duplicative or cumulative."). It is material if there is a reasonable possibility that the new evidence would have changed the outcome. Wilkins, 953 F.2d at 96; Borders, 777 F.2d at 955. There must be a good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Borders, 777 F.2d at 955.

In the instant case, the Commissioner's decision to grant disability benefits on a subsequent application one day after the ALJ's unfavorable decision constitutes both new and material evidence. See Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007) (Jones, J.) ("[W]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability may constitute new and material evidence."); Reichard v. Barnhart, 285 F. Supp. 2d 728, 734 (S.D. W.Va. 2003) (finding the ALJ's decision granting disability benefits less than a week after he first pronounced claimant was not disabled is new and material evidence). While the grant of benefits on a subsequent application is not preclusive evidence as to a prior application, it is new and material evidence warranting a remand. Hayes, 488 F. Supp. 2d at 565 (citing Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001)); see also Wilkins, 953 F.2d 93 (4th Cir. 1991).

The Commissioner found Lawrence to be disabled as of November 8, 2007, the date after the ALJ's final decision denying benefits. Lawrence's second disability application apparently was based on substantially the same impairments as his initial application, namely COPD, severe allergies, and depression. (R. 241.) As the court does not have all of the records upon which the award of benefits on the second application was based, it cannot determine if the disability determination was based on evidence similar to that considered by the ALJ on Lawrence's initial application or whether there were substantial changes in Lawrence's physical and/or mental condition subsequent to the denial of benefits by the ALJ. However, the evidence of record demonstrates long-standing, chronic impairments. There is no evidence to suggest material deterioration in Lawrence's condition after the ALJ's decision in this case. Perhaps such evidence exists, but it is not reflected in the record in this case and the chronic nature of Lawrence's impairments suggests otherwise. Thus, the Commissioner's subsequent decision is highly relevant to the determination of disability in this case. As the court held in Reichard,

> [T]here is a reasonable possibility that the evidence considered by ALJ Conover in reaching his second decision might well have changed the outcome in this case as it was before him the first time. It is not in any way evident from the current record in this case how Claimant became disabled less than a week after ALJ Conover's first decision.

285 F. Supp. 2d at 734.

There is good cause for the failure to incorporate this evidence into the record during the prior proceeding, as the ALJ's initial determination became final when the Appeals Council denied Lawrence's request for review on March 12, 2008 (R. 243-45),

15

and the Commissioner did not render a favorable opinion on Lawrence's subsequent application until August, 2008. (R. 241-42.) Finally, Lawrence has presented the court with a general showing of the nature of this new evidence, as it appears, albeit puzzlingly, in the administrative record. (R. 241-42.)

There is a possible inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged physical limitations only one day after the ALJ's unfavorable decision. Therefore, this case is remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this new evidence in determining whether an earlier disability onset date is warranted. See Hayes, 488 F. Supp. 2d at 565.

## V

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence. In this case, substantial evidence does not support the Commissioner's decision, as there is a potential inconsistency between the denial of disability benefits and the subsequent grant of benefits based on the same alleged physical and mental limitations only one day after the ALJ's unfavorable decision. Accordingly, this case is remanded pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of this new evidence in determining whether an earlier disability onset date is warranted, and, if so, determining such a date.

16

The Clerk of Court is hereby directed to send a certified copy of this

Memorandum Opinion to all counsel of record.

ENTER: This ___4th___ day of ___May___, 2009.

Michael F. Urbanski
United States Magistrate Judge